# UNITED STATES DISTRICT COURT

Suffolk, s.s. Eastern Massachusetts Division

Docket No.

Benjamin Tarisi,
Plaintiff
V.

Shawn P. Jenkins,
Commissioner of Massachusetts
Department of Correction
officially and individually
&
Joy L. Gallant,
Superintendent of Pondville Correctional Center
officially and individually
&
DMC Transcripts, Inc.,
Defendants.

FILED
IN CLERKS OFFICE
2026 SEP -3 P 1:00
U.S. DISTRICT COURT
DISTRICT OF MASS.

## COMPLAINT & REQUEST FOR JUDICIAL REVIEW

## Demand for Jury Trial

Pro Se Plaintiff Benjamin Tarisi ("Plaintiff") respectfully brings this action to complain and seek judicial review of the unlawful and tortious conduct of the three defendants where he was placed in Maximum Security Prison despite his lack of criminal record, and where he was prevented from writing and submitting his appeal, and where the defendant refused

to Provide the trial transcripts which he had requested more than Five months ago. As the result of the Defendants' actions, Plaintiff has become irreversibly traumatized, has lost his chance of appeal and is simply languishing in Defendants' correctional facility without any prospect of any kind.

## JURISDICTION

This court has subject matter jurisdiction under 28 U.S.C. Section 1331.

## VENUE

Venue is Proper in Eastern Massachusetts Division.

## PARTIES

1. Benjamin Tariri resides in Eastern Massachusetts,
2. Defendant Shawn P. Jenkins, Commissioner of Massachusetts Department of Corrections has an office at
3. Defendant Joy L. Gallant, Superintendent of Pondville Correctional Center has an office in Norfolk Massachusetts.
4. Defendant DMC Transcripts, Inc. is a company registered in the State of Massachusetts with a principal office in Massachusetts.

# Relevant Facts of the Case

5. Plaintiff represented himself at a jury trial in February of 2026 (Docket #2484CR488 Superior Court, Massachusetts). Plaintiff was found not guilty of six counts and guilty of the rest of the counts. The charges were all of non-violent nature. Prior to the trial, a superior court judge had offered to sentence plaintiff to probation along with restitution in lieu of incarceration. See the Honorable Judge Ellis Colloquy on May 21, 2025.

6. Plaintiff had declined to agree to probation because that would have necessitated him to admit to all the charges, which he did not believe he committed any crimes. Moreover, by doing so, plaintiff would have permanently be deprived of reinstating his license to practice law.

7. Three months later, another judge of the Superior Court offered plaintiff one year commitment as his sentence. Again, the plaintiff declined to accept for the same reason as he had declined probation.

8. Plaintiff, simply put, could not agree to admit to criminal acts even if it meant that it would keep him out of prison.

9. The trial was set for Feb. 17, 2026 before another judge who was aware of the Plaintiff's refusal to accept probation or a lesser sentence.

10. The trial was replete with irregularities both in terms of form as well as substance, raising numerous bases for appeal.

11. On March 6, 2026, the judge, despite the fact that there were several viable mitigating factors, such as Plaintiff's age of 68 years, father of 3 children, absence of any victims, and addiction, sentenced the plaintiff, who had no criminal record to 3-5 years in the State Prison.

12. Plaintiff immediately filed a Notice of Appeal.

13. He was then immediately transported to the State's Maximum Security Prison, the notorious Souza Baranowski in Shirley, Massachusetts.

14. Plaintiff had requested the transcripts through CPCS to be sent to the appeals court (and to him) so he can prepare his Appeal brief as he continued to represent himself.

15. At Maximum Security, Plaintiff was placed side by side with "Lifers" (Inmates who were

sentenced to life in prison due to the heinous crimes which they had committed. These Prisoners included murderers (mass murders as well as single murders), violent rapists, child rapists, heads of drug conglomerates, and other run-of-the-mill serious violent criminals.

16. There were daily fights in the prison followed by violent shake downs and lock downs on a regular basis.

17. At one point even, Plaintiff was sent to Solitary Confinement when he rightfully refused to enter a cell to be housed along with a child molester. There, he was confined to his cell 23 hours a day.

18. Plaintiff was forbidden from having any visitors, including his son who tried in vain to ask for entry to even see his father.

19. The conditions at Maximum Security were simply inhumane and not at all in sync with what the plaintiff, a non-violent first-time offender was supposed to endure.

20. During this period, Plaintiff suffered unusual trauma along with malnutrition and inability to even sleep.

21. Following numerous Plaintiff's requests, after 3 months in Maximum Security, he was told that he would be transferred to a facility called Boston Pre-Release.

22. In fact, 3 officials at the Maximum Security recommended in writing that Plaintiff be sent to Boston Pre-Release.

23. Nonetheless, DOC decided to place Plaintiff at Pondville Correctional Center, a minimum security facility.

24. Plaintiff voiced his objection and asked to be sent to Boston Pre-Release as recommended. DOC refused.

25. At Pondville, Plaintiff was still waiting for his transcripts of his trial. Nonetheless, he was trying to write his Appellate Brief as time was passing while he was in confinement. Plaintiff knew that he had a very viable basis for his appeal but he was being prevented from writing his brief.

26. 103 CMR 934.01(04) provides protections for "Inmates Rights." Among these rights is the ability to write and submit legal documents in support of his case.

27. Plaintiff was legally entitled to write a brief that was clear and legally persuasive. In order to do so, he needed to have access to legal material, i.e. legal research and search engines. He was also entitled to be able to write (and edit) his brief. He asked the Defendant Gallant but his request was denied.

28. Plaintiff explained that under the Equal Protection Clause of the 14th Amendment of U.S. Constitution, at a minimum an appellant should have access to a word processor so that he or she can write a legally-suitable document that can be edited. A document that one can move paragraphs and replace lines, and add lines as the Brief undergoes the editing process.

29. Plaintiff explained to Defendant Gallant that the opposing side (the attorneys for the Government) have a slew of apparatus, technological advanced state-of-the-Art computers, access to countless data and search engines, Micro soft Word, and even access (and use of AI). All that Plaintiff was asking for was a Word Processor, a simple $150- Word processor.(1) He even suggested that he would be content with a "Notes" App on the tablet, which is an ordinary feature of all cell phones.

---

[illegible] which he offered to pay (!) for himself.

30. Defendant Gallant refused even the most basic form of word processer. Instead, Defendant suggested that Plaintiff write his 20-30 Page Brief by hand (as he is doing with this complaint). Plaintiff attempted to explain that he couldnot possibly write a 20-30 page legal brief by hand because it would be highly deficient in both form and substance.

31. Defendant Gallant then suggested that Plaintiff could utilize the old typewriter in the facility. Plaintiff tried to use the old typewriter, the onlyone in the facility (Model name Swintec 2410CC). The typewriter did not even have a cross-out function. When you tried to cross out a word it would simply go back and just rattle on without change.

32. Plaintiff tried to explain to Defendant that one cannot write a legal brief without the ability to delete, replace, or move paragraphs and words. He explained that in the age of high technology, the facility could at least provide a simple writing software such as Microsoft Word. In the alternative, the facility could simply add a "Notes" App onto its existing tablet, which the inmates had access to.

33. Defendant Gallant rejected Plaintiff's request

for a word Processor. He was even denied the suggestion that he be moved to Boston Pre-Release where they had computers.

34. Plaintiff then followed the procedure as required under 103 CMR 491 - file a grievance. His grievance was denied. copy is enclosed as Exhibit A. He then filed an appeal of his denial which it too was also promptly denied.

35. In the meantime, Plaintiff's transcripts are also have not been made available to him. This is despite repeated requests for the transcripts of the trial. In all, it has been five months since Plaintiff had ordered the transcripts.

36. Plaintiff has been ready to write his legal brief even in the absence of the court transcripts. But he cannot because he does not have access to a word Processor and the Defendants Gallant and Jenkins are unwilling to accommodate him.

37. As the result, Plaintiff has been languishing in Defendant's Prison despite the fact that his appeal would have been quite viable with a high likelihood of sucess on its merits.

# COUNT I
## (Violation of 42 USC §1983 & 14th Amendment of U.S. Constitution (Equal Protection Clause))

38. Plaintiff repeats and reavers the above paragraphs as though more fully stated herein.

39. At all relevant times, Plaintiff was deprived of the opportunity to write his appellant's brief.

40. Plaintiff was deprived of access to a word processer or any means that he could write, edit, and save his legal material in order to submit it to the Massachusetts appellate court

41. In the meantime, Plaintiff's opposing counsel had ample access to all means of writing and research including editing, printing, and revising the Appellee's brief as it saw fit.

42. Plaintiff was also deprived of the trial transcripts despite the fact that he had followed the procedure to request and has waited five months without any access to these transcripts.

43. Defendants have violated the Plaintiff's Constitutional rights by preventing him from filing his appeal.

# COUNT II
# (NEGLIGENCE)

44. Plaintiff repeats and reavers the above Paragraphs as though more fully stated here in.

45. Defendants Jenkins and Gallant have negligently faild to care for the welfare of their inmate who is in their custody.

46. Defendants Jenkins and Gallant had a duty of Care towards the plaintiff to ensure his safety, Physical and mental while in their custody.

47. By placing Plaintiff in the same space (and in fact in the same cell) as dangerous criminals, without any reason, exposing him to the Possibility of extreme harm or even death, the Defendant Jenkins has breached its duty of Care,

48. By depriving the Plaintiff his right to draft and file his legal brief for his appeal Defendants Galland and Jenkins have breached their duty of Care.

49. By failing to provide the trial transcripts after 5 months since the trial, Defendant DMC has breached its duty of Care.

# COUNT III
## (Intentional Infliction of Emotional Distress)

50. Plaintiff repeats and reavers the above paragraphs as though more fully stated herein.

51. The Defendant Jenkins's conduct by placing the plaintiff in Maximum Security prison next to known killers and child molesters and rapists, many of whom were sentenced to life in prison was intentional.

52. Defendant Jenkins's lack of concern for Plaintiff's health and well being in such dangerous environment was reckless and wanton.

53 Defendant Gallant's conscious decision to not provide a means for plaintiff, a reasonable one, so that he could write and submit his appeal brief was intentional and reckless.

54. Defendant DMC's conduct for failing to produce the trial transcripts to the plaintiff after 5 months of delay was intentional and reckless

55. The Defendant's conduct was extreme and outrageous.

56. The Defendants' conduct was beyond all bounds of decency, to be regarded as atrocious and utterly intolerable in a civilized community.

57. The Defendant's conduct has resulted in severe emotional damage, traumatizing the Plaintiff for a life time of irreversible damage.

# PRAYERS FOR RELIEF

Wherefore, Plaintiff respectfully Prays for judgement against the Defendants as follows;

a. Declare and render the actions of all three Defendants to be in violation of the U.S. Constitution 42 USC §1983 as well as the state of Massachusetts Declaration of Rights;

b. Order Defendant Jenkins and Gallant to immediately provide a word processor or transfer the Plaintiff to Boston Pre-Release and to allow him to use the Word Processor there in order to write his Brief;

c. Compensate Plaintiff for injuries caused by the Defendants as described in his complaint;

d. Pay Plaintiff actual, incidental, consequential, statutory, and punitive damages for past, present and future injuries caused by the actions of the Defendants

e. Pay Plaintiff's attorney fees and legal fees, prejudgement interest, and costs; and

f. Any other relief, which the honorable court deems just.

PLAINTIFF HEREBY REPECTFULLY REQUESTS A TRIAL BY A JURY

Dated: Aug. 24, 2026

Respectfully submitted
Benjamin Tasiro

Address: Benjamin Tarini
W120704
Randville Correctional Center
P.O. Box 146
Norfolk, MA 02056